IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| THOMAS ROBERTSON | : | No. 2:20-cr-419 |
| | : | |

MEMORANDUM OPINION

**Goldberg, J.**                                                                                          September 19, 2022

Pending before me is defense counsel's *ex parte* motion to withdraw as counsel.[1] The defendant, who is charged with bank fraud and various other financial crimes, has had a litany of issues with the multiple court-appointed lawyers who were appointed since his indictment in November of 2020. For the following reasons, I find that the defendant's dilatory and abusive conduct, despite my warnings of their consequences, constitutes a "forfeiture with knowledge" of his right to assistance of counsel. Accordingly, the motion to withdraw as counsel will be granted in part. The defendant will represent himself going forward, with current counsel serving as back-up.

**I.      History of Defendant's Conduct**

On November 19, 2020, the defendant was indicted and charged with two counts of bank fraud, in violation of 18 U.S.C. § 1344 (counts 1 & 2) and two counts of false statements on loan applications, in violation of 18 U.S.C. § 1014 (counts 3 & 4) (ECF No. 1). This case has previously been assigned to two other judges in this court. Although the reason for the most recent reassignment is unclear, through a *pro se* "Omnibus Pretrial Motion" (ECF No. 28), the defendant

---

[1] Although this motion was filed *ex parte*, any client communications or confidential information contained in the motion has already either been discussed in open court or attached to documents the defendant has filed with the court. For those reasons, the motion will be docketed.

1

accused the last assigned judge of various misconduct, alleging that the judge had "lied and testified in violation of F.R.Evid. 605, dismissed suit to protect colleague judges (also this Judge has sabotaged other cases to favor government interests in both state and federal forums.[)]".  In that motion, the defendant accused a long list of other government officials of "outrageous government conduct," including more than 20 sitting, former, or deceased federal district court and appellate court judges.  Id.

Following his initial appearance and arraignment in December of 2020, the Federal Community Defenders Office was appointed to represent the defendant.  Although not memorialized on the docket, the assigned prosecutor has indicated that the defendant was briefly represented by private counsel before the first public defender entered her appearance.  Trial was originally scheduled for February 15, 2021 but has been rescheduled several times upon motions from both the government and defense counsel (ECF Nos. 11, 17, 51).  Postponements have also occurred due to the fact that the case has been assigned to three different district court judges. (ECF Nos. 23, 42).

When the case was reassigned to me on October 12, 2021, there was a pending *pro se* motion to remove the Federal Defenders Office on the basis that the first assigned Assistant Defender refused to follow the defendant's instructions to seek "subpoena and depositions of U.S. Federal Judges." (ECF No. 27).  At an October 2021 status of counsel hearing, I informed the defendant that his counsel could not continue to represent him because she was departing the Federal Defenders Office.  The defendant responded that he wanted the Federal Defenders Office to be removed from his case entirely, and that he would prefer to be appointed another attorney from the Criminal Justice Act panel.  The defendant indicated that "I just do my research, and what I observe is [the Federal Defenders Office] works with the government instead of working with

the client[.]" (Hr'g Tr. 11:23-25, Oct. 28, 2021; ECF No. 36). I found the defendant's reasons did not justify the removal of the Federal Defenders Office and denied his motion. Shortly after the hearing, the defendant filed another "supplemental" motion to remove the Federal Defenders Office, alleging that the Federal Defenders "act at the control and behest of trial judges," and listing multiple "victims of the Court's corruption against African Americans by federal judges." (ECF No. 34). I denied the motion and a second lawyer from the Federal Defenders Office entered his appearance on behalf of the defendant as his second court-appointed lawyer.

Not long after he entered his appearance, his counsel filed a motion to withdraw as counsel, citing a "total and irreparable breakdown in communication with his client after only one conversation." (ECF No. 40). I scheduled another status of counsel hearing to address these concerns. Approximately one week before the January 2022 status of counsel hearing, the government filed a superseding indictment charging the defendant with bank fraud, in violation of 18 U.S.C. § 1344 (counts 1, 2 & 5); false statements on loan applications, in violation of 18 U.S.C. § 1014 (counts 3 & 4); mail fraud, in violation of 18 U.S.C. § 1341 (counts 6-9); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (counts 10-13). (ECF No. 43). Following the January 2022 status of counsel hearing, and upon finding that there had been a complete breakdown in communication between counsel and the defendant, I granted his second lawyer's motion to withdraw as counsel, and appointed counsel from the CJA panel ("CJA Counsel"). I also granted CJA Counsel's unopposed motion for a six-month continuance of the trial date, and trial was scheduled for November 14, 2022. (ECF No. 58).

Shortly after the defendant was provided with his third court-appointed lawyer, he filed a *pro se* motion to remove CJA Counsel. (ECF No. 60). In that motion, the defendant stated that "there is a fundamental conflict regarding the legal strategy" between he and CJA Counsel. He

requested that she be removed as counsel and that he be provided sixty days to retain private counsel.

I held yet another status of counsel hearing in May of 2022 to address the defendant's concerns about his representation. During that hearing, I advised that I would not allow the defendant to seek new counsel in perpetuity, as his trial date had already been extended several times and it was becoming apparent that he was actively sabotaging his relationships with his lawyers to manipulate the judicial system. For these reasons, I advised the defendant that CJA Counsel would be his last court-appointed lawyer, and concluded the hearing by giving the defendant the choice to either work through his disagreements with CJA Counsel or retain private counsel who could abide by the November 14, 2022 trial date. I subsequently denied the defendant's motion to remove CJA Counsel.

Following the May 2022 status of counsel hearing, the defendant filed another *pro se* motion to remove CJA Counsel and requested that I appoint a fourth lawyer via the Criminal Justice Act. I denied that motion, reiterating that the defendant's options were: (1) to work things out with CJA Counsel, (2) retain private counsel, or (3) although not advisable, represent himself. CJA Counsel then filed the present *ex parte* motion to withdraw as counsel. (ECF No. 70). In her motion, CJA Counsel states that "[the defendant's] disagreement with counsel's advice and strategy has become extreme enough that it has caused a breakdown in communications and created an irreconcilable conflict of interest." Id. She further explained that the defendant continues to instruct her to file motions that she has already stated she will not file, has made accusations that she is "working with the Government," and has made "statements that he has the right to be in charge of his own defense." Id.

I held a status of counsel hearing on August 29, 2022. CJA Counsel explained that the defendant was demanding that she follow a defense strategy she felt she could not legally or ethically pursue. I provided the defendant with the choice to either retain private counsel or represent himself with CJA Counsel acting as back up counsel. The defendant requested another court-appointed lawyer, which, if granted would have been his fourth court-appointed lawyer and fifth overall to represent him in this matter. I rejected this request based in part on the defendant's history of dilatory conduct and my repeated warnings that I would not appoint yet another lawyer causing further expenditure of CJA funds. The defendant then handed a civil complaint to CJA Counsel, the assigned prosecutor, and my staff that he indicated he planned to file in a lawsuit against the three of us and others.[2] After conducting a colloquy to advise the defendant of the risks of proceeding *pro se*, I concluded the hearing to further consider the defendant's counsel situation.

Another status of counsel hearing was held on September 7, 2022. During that hearing, I requested more information from CJA Counsel and the defendant so that I could better understand the nature of their disagreements. CJA Counsel explained that, "[the defendant] has asked me to allege a larger conspiracy against various Members of the U.S. Attorney's Office and possibly the Court, as well, and also U.S. Probation[.]" (Hr'g Tr. 25:9-12, Sept. 7, 2022; ECF No. 78). CJA Counsel went on to explain that, "[the defendant] wants me to subpoena individuals from other courts, other Judges, individuals who I am not comfortable subpoenaing, because I think there's no basis for it." (Id. at 25:18-21). The prosecutor then clarified that, "I think it's relevant for the record that the issue that [the defendant] is having with [CJA Counsel], I think it's the same issue

---

[2] See 2:22-cv-03532.

he's had with [his previous private counsel and the first two court-appointed lawyers].  This is not a new issue. . . each counsel – it's the same issue repeated again." (Id. at 42:24-25, 43:1-6).[3]

After further discussions with the defendant, his counsel, and the prosecutor, I concluded that the defendant was attempting to manipulate the judicial system in order to obtain a fourth court-appointed lawyer, who he would inevitably become dissatisfied with as was his pattern with his three previous lawyers.  I then verbally reviewed the defendant's financial situation to confirm that the defendant still could not afford private counsel.  Upon finding that he still qualified for a court-appointed lawyer, I asked the defendant if he would like to proceed *pro se*.  He stated, "I need a lawyer to help me." (Hr'g Tr. 24:22-23, Sept. 7, 2022; ECF No. 78).  Because the defendant had already been warned numerous times that if he could not work things out with CJA Counsel that he would have to represent himself, I conducted an in-depth colloquy informing the defendant of the dangers of proceeding *pro se*.  United States v. Peppers, 302 F.3d 120 (3d Cir. 2002).  After the colloquy, the defendant advised that he did not want CJA Counsel to continue representing him.  CJA Counsel also informed me that before the hearing, she approached the defendant to

---

[3]    Some of the defendant's recent *pro se* filings shed light on why he demanded that CJA Counsel subpoena certain individuals.  He alleges in a recent filing titled "Defendant's Objections to Propose Peppers Colloquy" that "racist judges have infiltrated the Third Circuit Court." (ECF No. 85, p. 2).  He goes on to allege that "[t]he majority white federal judges and their lackys (sic) ([CJA Counsel]) systematically cheat African Americans during trial for the benefit of 95% white officers of the court and their lackys (sic); Defendant has documented evidence of this covert practice[.] . . . If the named judges were deposed as requested by all previous lawyers it would have established this Court's, said covert practices. . . and change of venue would be mandatory." (Id.)  He goes on to name specific judges in this document, calling one "a racist liar and [a] hypocrite." (Id. at p. 3.)

In a separate *pro se* filing the defendant filed in September of 2021, the defendant expanded on this topic, alleging that: "this Court (Third Circuit) consistently applies the same Star Chambers protocols against African Americans, in order to serve the government interest in getting convictions e.g. Breonna Taylor's murderers paid $12,000,000 (12 million dollars United States currency) of tax payers money and was not charged with murder.  Moreover, the issue of the grand jury Star Chamber Court tactics by U.S. attorneys, also constitutes an overt act of selective prosecutions e.g. Bill Cosby was prosecuted and convicted falsely and served two and one half years in jail for the same situation as President Clinton who was never tried.  Rapper and international star "Lil Kim", was found guilty of perjury and served time at the same Court where the clerks and lawyers committed perjury and were never charged[.]" (ECF No. 28).

discuss something with him and a man who attended the hearing who the defendant described as his "associate" told the defendant not to speak with CJA Counsel because she was "the enemy" and that the associate was going to "destroy her." (Hr'g Tr. 8:3-7, Sept. 7, 2022).

## II. Legal Standards and Analysis

The Sixth Amendment to the United States Constitution guarantees indigent defendants the right to court-appointed counsel. United States v. Hodge, 870 F.3d 184, 201 (3d Cir. 2017). That right, however, has limits. "There is no absolute right to a particular counsel." United States v. Welty, 674 F.2d 185, 188 (3d Cir. 1982) (quoting United States ex rel. Carey v. Rundle, 409 F.2d 1210, 1215 (3d Cir. 1969)); see also United States v. Mendez-Sanchez, 563 F.3d 935, 944 (9th Cir. 2009) ("There must be limits on the ability of a defendant to gain new counsel when the defendant is acting unreasonably and especially where appointing new counsel would require a continuance with a consequent disruption to the court process."); United States v. Jennings, 855 F. Supp. 1427, 1441 (M.D. Pa. 1994), aff'd, 61 F.3d 897 (3d Cir. 1995) ("The right of an accused to effective assistance of counsel, however, does not extend to the appointment of counsel of choice, or to special rapport, confidence, or even a meaningful relationship with appointed counsel. There is no right to counsel who will blindly follow the defendant's instructions."); United States v. Fowler, 605 F.2d 181, 183 (5th Cir. 1979) ("The right to assistance of counsel, cherished and fundamental though it be, may not be put to service as a means of delaying or trifling with the court."); United States v. McFadden, 630 F.2d 963, 972 (3d Cir. 1980) (no reversible error where district court granted second court-appointed lawyer's motion to withdraw and allowed defendant to represent himself with back-up counsel where defendant consistently rejected his previous lawyers' advice and threatened to sue them if they did not follow his instructions).

The Sixth Amendment also provides criminal defendants the right to represent themselves and proceed *pro se*. Faretta v. California, 422 U.S. 806, 819 (1975). "When a defendant expresses the wish to represent himself, the court must conduct an inquiry to ensure that the defendant understands the consequences and risks of waiving the right to counsel." United States v. Noble, 42 F.4th 346, 350 (3d Cir. 2022) (citing Peppers, 302 F.3d at 120). The court must ensure that: (1) the defendant has asserted his or her desire to proceed *pro se* "clearly and unequivocally;" and (2) the court must inquire thoroughly to satisfy itself that the defendant understands "the nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved." Peppers, 302 F. 3d at 132 (quoting Gov't of Virgin Islands v. Charles, 72 F.3d 401 (3d Cir. 1995)).

Sometimes, a defendant who has not requested to represent themselves may nonetheless be required to do so because their behavior is so disruptive and abusive to the system that they have effectively "waived" or "forfeited" their right to counsel. United States v. Goldberg, 67 F.3d 1092, 1101 (3d Cir. 1995). The concepts of "waiver" and "forfeiture" in this context are distinct and require brief discussion.

"[W]aiver is an intentional and voluntary relinquishment of a known right." Id. at 1099. In the Sixth Amendment right to counsel context, waiver typically involves the defendant's affirmative, verbal request to proceed pro se. Id. The United States Supreme Court requires these waivers to be knowing, voluntary, and intelligent. Johnson v. Zerbst, 304 U.S. 458, 468–69 (1938). And as noted above, when a defendant requests to proceed *pro se*, Faretta requires trial courts to ensure that the defendant is aware of the risks of representing himself, which is often accomplished by conducting a formal colloquy on the record. Goldberg, 67 F.3d at 1099. The

Third Circuit requires trial courts to conduct a Faretta inquiry before allowing a defendant to proceed *pro se*. United States v. Welty, 674 F.2d 185, 188–89 (3d Cir. 1982).

Forfeiture, on the other hand, does not require the relinquishment of a right to be knowing or intelligent. "Forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." Goldberg, 67 F.3d at 1100. Thus, forfeiture can result even if the defendant was not warned about engaging in further misconduct and was not advised of the risks of representing himself. Id. Due to the drastic nature of the sanction, forfeiture requires the most extreme dilatory conduct before it may be imposed on a defendant. Id.

Falling somewhere in between these two concepts is a hybrid situation courts have termed "waiver by conduct." Id. "Waiver by conduct" combines elements of both waiver and forfeiture. When a defendant has been warned that he will lose his attorney if he continues to engage in dilatory tactics, any further misconduct "may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel." Id.; see also United States v. Fazzini, 871 F.2d 635, 638 (7th Cir. 1989) (defendant's actions in refusing to cooperate with four different court-appointed attorneys despite warnings of the consequences operated as a knowing and intelligent waiver of his right to counsel despite his insistence that he wanted a new lawyer and did not want to represent himself). The Goldberg court emphasized that the "waiver by conduct" cases differ from the classic waiver situations because they do not involve a defendant who is voluntarily waiving their right to counsel and affirmatively requesting to proceed *pro se*. Rather, the court explained:

> In many situations there will be defendants who engage in dilatory conduct but who vehemently object to being forced to proceed pro se. These defendants cannot truly be said to be "waiving" their Sixth Amendment rights because although they are voluntarily engaging in misconduct knowing what they stand to lose, they are not affirmatively

9

requesting to proceed pro se. See United States v. Fazzini, 871 F.2d 635 (7th Cir.) (defendant who was warned about consequences of dilatory conduct insisted he was not waiving his right to counsel), cert. denied, 493 U.S. 982, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989). Thus, instead of "waiver by conduct," this situation more appropriately might be termed "forfeiture with knowledge."

Goldberg, 67 F.3d at 1101. I find that this situation falls into the "waiver by conduct" realm. The defendant has been dissatisfied with virtually every lawyer that has been provided to him. However, he continues to state that he does not wish to represent himself. The defendant's pattern of being completely unable or unwilling to cooperate with his lawyers leads me to conclude that he is manufacturing these disagreements with his lawyers in order to delay trial. I have now held five status of counsel hearings with the defendant, who is on his third court-appointed lawyer and fourth lawyer overall. The defendant has been reminded at several of these hearings that his lawyers are not puppets who must blindly follow his instructions to file motions and issue subpoenas they do not believe are ethically appropriate or legally supported by the facts. I have advised the defendant several times that CJA Counsel was his last court-appointed lawyer, and if he continued to refuse to cooperate with her, he would have to retain private counsel or represent himself.[4] Defendant has repeatedly ignored my instructions and instead of attempting to communicate and work with CJA Counsel regarding a viable trial defense or non-trial disposition, he has continued to engage in conduct which includes filing lawsuits against CJA Counsel, the prosecutor, and myself that appear to be frivolous. Defendant also brought associates to his status of counsel hearings who have indicated that they would "destroy" CJA Counsel.

Motions to withdraw as counsel may only be granted where "good cause" is shown, such as "a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with [the] attorney." Welty, 674 F.2d at 188. I find that this standard is met under these

---

(Hr'g Tr. 4:5-11; 7:11-14; 8-9:23-25,1-7, Aug. 29, 2022; ECF No. 83).

10

circumstances, as there has been a complete breakdown in communication between CJA Counsel and her client, and I will not require her to compromise her ethical and professional responsibilities to the court by ordering her to be lead counsel representing a defendant who demands that she make frivolous arguments on his behalf.

Certainly, the defendant's dilatory conduct in suing CJA Counsel and bringing his associates to court to levy threats against her is severe enough such that his conduct could amount to a forfeiture of his right to counsel. However, because I have already conducted a thorough colloquy, this unusual situation seems to better fit a "waiver by conduct," or a "forfeiture with knowledge" of his right to assistance of counsel. But that terminology is immaterial because the result is the same. The defendant will no longer be afforded court-appointed counsel and must represent himself in this matter if he is unable to retain private counsel who can abide by the current November 14, 2022 trial date.

CJA Counsel will act as back-up counsel for the defendant. He may not order her to file motions or make specific arguments, but she will be available for consultation and advice both leading up to and during trial. Defendant is reminded that he is still representing himself and he may not abuse CJA Counsel's services more than he already has. I note that CJA Counsel expressed concern at the last status hearing about acting as back-up counsel in light of the fact that the defendant has filed a lawsuit against her. While I recognize that this situation could present a potential conflict, the alternative option of appointing yet a fourth lawyer to act as back-up counsel poses the same risks because it is entirely likely that the defendant would not cooperate with new counsel and would resort to filing more frivolous lawsuits. Ultimately, appointing CJA Counsel as back-up counsel is the most efficient solution to the unique circumstances presented because it ends the cycle of constantly appointing new counsel while conserving the most resources as

possible. And lastly, the Department of Justice's right to have its day in court cannot be lost in this analysis.

    An appropriate order follows.