IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| THOMAS ROBERTSON | : | No. 2:20-cr-419 |

**ORDER**

**AND NOW**, this 2nd day of January, 2023, upon consideration of numerous pretrial matters which include: the defendant's competency to stand trial, the government's "Motion in Limine to Prevent Admission and to Restrict Cross-Examination of Witnesses Regarding an Unsubstantiated Complaint Made by the Defendant" (ECF No. 66) and "Notice of Intent to Admit Defendant's Proffer Statements" (ECF No. 68), and the defendant's *pro se* "Motion to Dismiss All Charges" (ECF Nos. 105, 109), "Response to Memorandum Opinion of 9/19/22" (ECF Nos. 103, 106), and "Motion to Disqualify U.S. Judge" (ECF No. 77), and after a hearing, I find the following:

**The Defendant's Competency**

1. The defendant's conduct throughout this matter has raised some concerns regarding his competency to stand trial. These concerns are detailed in my September 19, 2022 Opinion where I concluded that the defendant had, through his continued conduct, waived his right to appointed counsel. (See, e.g., unfounded allegations of racist conduct on the part of judges who he has not appeared before; alleged "Star Chambers protocols;" lawsuits filed against numerous judges, including the undersigned, the defendant's back-up counsel, the Assistant United States Attorney, and several others alleging the existence of a sweeping conspiracy to

1

deprive him of his right to a fair trial because "the majority white federal judges and their lackys (sic) systematically cheat African Americans during trial.").

2. Given these concerns, on October 11, 2022, I ordered the defendant to submit to a competency examination. The examination was administered by Dr. Kirk Heilbrun, Ph.D., whose services were jointly recommended by counsel. I received a copy of Dr. Heilbrun's report on December 23, 2022.

3. In the Conclusions section of the report, Dr. Heilbrun states that: "Mr. Robertson appears to have a reasonable factual and rational understanding of his charges and of the roles of the defense attorney, prosecutor, and jury. Mr. Robertson demonstrates an adequate rational understanding of elements of the court process, plea options, and sentencing outcomes." Dr. Heilbrun additionally notes that "[w]e do not conclude that Mr. Robertson would be at a particular disadvantage relative to other *pro se* defendants in other respects – he has his own style of processing information, but he can eventually understand it: <u>he does not experience serious mental illness that could grossly interfere with his capacity to understand, reason, and behave appropriately.</u>" (Forensic Evaluation of Thomas Robertson, ECF No. 116) (emphasis added).[1]

4. To be competent to stand trial, a defendant must "possess the present ability to consult with his lawyer with a reasonable degree of rational understanding, and a

---

[1] Dr. Heilbrun does raise concerns about the defendant's ability to represent himself *pro se* in this matter: "[Mr. Robertson's] difficulty in processing verbal material efficiently combined with his disinclination to seriously consider the advice of counsel in legal strategy would make *pro se* representation problematic in this case." Dr. Heilbrun does not attribute those concerns to any mental illness, and I note that back up counsel remains available to the defendant to assist with reading and verbal communication, as well as processing information.

2

rational as well as factual understanding of the proceedings against him." <u>United States v. Noble</u>, 42 F.4th 346 (3d Cir. 2022). Although Dr. Heilbrun raises concerns about the defendant's ability to represent himself,[2] nothing in the report indicated that the defendant is not competent to stand trial. Neither the government, the defendant, nor his back up counsel suggested otherwise or requested a more formal hearing pursuant to 18 U.S.C. § 4247(d).

**<u>Outstanding Motions</u>**

5. With respect to the government's "Motion in Limine to Prevent Admission and to Restrict Cross-Examination" (ECF No. 66), at this juncture it appears that any information related to the state charges filed in South Carolina would be inadmissible at trial pursuant to Federal Rule of Criminal Procedure 403. However, I cannot make a fully informed determination without reviewing and understanding the evidence of record at trial. Accordingly, and for other reasons stated on the record, the government's motion is **HELD UNDER ADVISEMENT**.

6. The government's "Notice of Intent to Admit Defendant's Proffer Statements" (ECF No. 68) is also **HELD UNDER ADVISEMENT** for reasons stated on the record.

7. The defendant has filed several *pro se* motions. His motions titled "Motion to Dismiss All Charges" (ECF Nos. 105, 109) and "Response to Memorandum

---

[2] The position the defendant finds himself in (waiver of his right to counsel, <u>but</u> with back up counsel available) is a product of his own making. As noted previously, the defendant cannot be permitted to seek new court-appointed counsel for frivolous reasons, in perpetuity, until he finds someone who accepts his preferred legal strategy while continuing to delay trial. (<u>See</u> Memorandum Opinion on Motion to Withdraw as Counsel, ECF No. 87). And again, back up counsel will continue to be available to assist the defendant with processing information.

Opinion of 9/19/22" (ECF Nos. 103, 106), together allege that the defendant's right to a speedy trial under the Speedy Trial Act and the Sixth Amendment to the United States Constitution has been violated because there has been an approximately two-year delay since he was indicted. The government responds that the majority of continuances in this case have either been sought by the defendant himself or caused by his "relentless attempts to replace whichever attorney happened to be representing him at any given time." (Gov. Br. p. 12, ECF No. 114). There have additionally been delays outside the control of either party attributable to the COVID-19 pandemic, judicial reassignments, and the defendant's competency evaluation.

8. I thoroughly outlined the defendant's dilatory conduct related to his dissatisfaction with his three different court-appointed lawyers in my September 2022 Memorandum Opinion, and those details need not be repeated here. (ECF No. 87). However, from approximately September of 2021 through October of 2022, the majority of continuances in this case were the result of his inability to cooperate with his lawyers. I find that no Sixth Amendment violation has occurred because the defendant's dilatory conduct is more to blame for the delay of his trial date than any continuances sought by the government (none of which, notably, he has opposed) and the defendant has suffered no prejudice by the delay. Barker v. Wingo, 407 U.S. 514, 530 (1972) (balancing test to analyze alleged speedy trial violations under the Sixth Amendment includes the reason for the delay, length of the delay, the defendant's assertion of the right, and any prejudice to the defendant).

9. I also find that no Speedy Trial Act violation has occurred because since the defendant's first motion for a continuance of the trial date was granted on February 9, 2021 (ECF No. 14), there has been an uninterrupted series of court-approved speedy trial continuances, each of which were accompanied by a finding that the ends of justice warranted the delay under one of the Speedy Trial Act exceptions. 18 U.S.C. § 3161(h).

10. The defendant additionally asserts that the bank fraud charges against him (counts 1, 2 & 5) are legally deficient under Federal Rule of Criminal Procedure 12(b)(3). The defendant cites Loughrin v. United States, 573 U.S. 351 (2014) and argues that bank fraud under § 1344(2) "requires false or fraudulent representations of pretenses to third parties," but the charges against him allege misrepresentations directly to the banks themselves. Thus, the defendant argues these charges must be dismissed. This argument is misplaced. Section 1344(2) clearly encompasses fraudulent misrepresentations made directly to banks in order to obtain property from those banks. Shaw v. United States, 580 U.S. 63, 71 (2016).

11. The remainder of the defendant's arguments involve conspiracy theories that all three of his court-appointed lawyers have conspired against him with the government. There is no evidentiary support for these theories. I have explored these issues at length with the defendant and have consistently rejected these theories as baseless.

12. For the foregoing reasons, the defendant's *pro se* pretrial motions (ECF Nos. 103, 105, 106, 109) are **DENIED**.

13. The defendant has also filed several motions seeking my recusal from this matter. (ECF No. 38, 77). Disqualification under 28 U.S.C. § 455 is not proper merely because a defendant sues the presiding judge, and recusal is particularly disfavored when it is based on conflicts with the judge that the defendant has clearly manufactured as an attempt at judge-shopping and delaying trial. United States v. Bertoli, 854 F. Supp. 975, 1120 (D.N.J.), vacated on other grounds, 40 F.3d 1384 (3d Cir. 1994). This appears to be exactly what is occurring in this matter. Because the defendant articulates no legitimate basis for my recusal, his motion (ECF No. 77) is **DENIED**.

14. The government shall file a response to the defendant's "Motion to Dismiss Indictment" (ECF No. 117) **within ten (10) days from the date of this Order**.

**BY THE COURT:**

*/s/ Mitchell S. Goldberg*
**MITCHELL S. GOLDBERG, J.**